UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS


UNITED STATES OF AMERICA,

                          Docket No. 14-20069

        Plaintiff,

    vs.                   Urbana, Illinois
                          September 21, 2015
                          2:30 p.m.

TALON G. WRIGHT,

        Defendant.


SENTENCING HEARING

BEFORE THE HONORABLE COLIN STIRLING BRUCE
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S :

For the Plaintiff:    ELLY M. PEIRSON, ESQUIRE
                      Assistant United States Attorney
                      201 South Vine Street
                      Urbana, Illinois 61802
                      217-373-5875


For the Defendant:    ELISABETH R. POLLOCK, ESQUIRE
                      Assistant Federal Defender
                      300 West Main Street
                      Urbana, Illinois 61801
                      217-373-0666


Court Reporter:       LISA KNIGHT COSIMINI, RMR-CRR
                      U.S. District Court
                      201 South Vine, Suite 344
                      Urbana, Illinois 61802


Proceedings recorded by mechanical stenography; transcript
produced by computer.

USA v. TALON G. WRIGHT, Case No. 14-20069

```
 1              (In open court, 2:32 p.m.)

 2              DEPUTY CLERK:  This is in Case Number 14-20069,

 3    United States of America versus Talon G. Wright.

 4              THE COURT:  The United States is represented by

 5    AUSA Elly Peirson.

 6              The defendant is represented by his attorney,

 7    Elisabeth Pollock, from the Federal Defender's Office.

 8    The defendant is in custody.  He is also personally

 9    present.

10              Mrs. Peirson, have you had a chance to receive

11    and review the revised presentence report?

12              MS. PEIRSON:  I have.

13              THE COURT:  The revised presentence report

14    indicates that the government has no objections.  Is that

15    still the case?

16              MS. PEIRSON:  It is, Your Honor.

17              THE COURT:  Do you have any evidence you intend

18    to present in aggravation?

19              MS. PEIRSON:  Your Honor, we filed -- today I

20    received a victim impact statement from the victim in

21    this case, as well as her parents; and that was filed as

22    document 29.  They have asked me to read that into the

23    record, and that is the only presentation of evidence

24    that the government intends to do.

25              THE COURT:  You can read that into the record
```

USA v. TALON G. WRIGHT, Case No. 14-20069

1   if you choose to do so.  I have read it.  It is a --

2   well, there's the initial filing; and attached to it is a

3   three-page -- well, three pages of thoughts and

4   commentary.

5            Is that accurate?

6            MS. PEIRSON:  That's correct, Your Honor.

7            THE COURT:  If you want to read it, I'll let

8   you read it; but I can tell you that I have read it, and

9   I'll take it into consideration.

10            Do you wish to read it into the record or --

11            MS. PEIRSON:  No.  If the Court has represented

12  that it's reviewed it -- I just -- I know I filed it late

13  because I received it late, and so I didn't want to have

14  that not be considered by the Court thoroughly.  But if

15  the Court has had a chance to review it, then there's no

16  reason to --

17            THE COURT:  You fortuitously filed it before

18  lunch, so I had a chance to read it after lunch and

19  before we started our afternoon sentencing hearing; so I

20  did have a chance to read it.

21            All right.  Mrs. Pollock, have you received and

22  reviewed the revised presentence report?

23            MS. POLLOCK:  Yes, Your Honor.

24            THE COURT:  Did you have a chance to review it

25  with your client?

```
 1           MS. POLLOCK:  Yes, I did.

 2           THE COURT:  I have read the sentencing

 3   memorandum you filed with the letters that were attached

 4   also.  They were filed a while ago.  I had plenty of time

 5   to read them on Sunday.

 6           There is one objection of which I am aware in

 7   the presentence report.

 8           MS. POLLOCK:  And we are withdrawing that

 9   objection, Your Honor.  It is the objection to sexual

10   contact in paragraph 25 of the presentence report, and it

11   is being formally withdrawn.

12           THE COURT:  It's being withdrawn.  All right.

13   So we'll show that objection as being withdrawn.  We'll

14   mark that box indicating it's withdrawn.

15           Do you have any other evidence you wish to

16   present in mitigation?

17           MS. POLLOCK:  No, Your Honor.

18           THE COURT:  All right.  Mr. Wright, have you

19   had a chance to read and review the revised presentence

20   report?

21           DEFENDANT WRIGHT:  Yes, Your Honor.

22           THE COURT:  Did you talk to Mrs. Pollock about

23   it?

24           DEFENDANT WRIGHT:  Yes, Your Honor.

25           THE COURT:  Now, she's indicated that she
```

1  has -- there's one objection.  She's withdrawn that

2  objection.  Do you have any objections you want me to

3  consider?

4          DEFENDANT WRIGHT:  No, Your Honor.  We talked

5  earlier about it, me and Ms. Elisabeth.

6          THE COURT:  Yeah.  Not you and I.

7          DEFENDANT WRIGHT:  Right.

8          THE COURT:  Yeah.  You mean -- by "we," you

9  mean you and Mrs. Pollock have talked about it?

10          DEFENDANT WRIGHT:  Yes.

11          THE COURT:  Okay.  You looked at me said, "We

12  talked about it," and I thought, "You and I didn't talk

13  about it."

14          All right.  So with that being said, there will

15  be no objections to any parts of the presentence report.

16  The Court adopts the revised presentence report and all

17  of its findings contained therein.

18          Therefore, the total offense level is 35.  The

19  criminal history category is I.  The applicable guideline

20  range is 180 to 210 months' imprisonment; a five-year to

21  life term of supervised release as to Count 1; five-year

22  to life -- well, actually, as to both Counts 1 and 3.

23  Probation is not a possibility.  There is a fine range of

24  20,000 to $200,000.  Restitution is not applicable.  And

25  there are -- there is a $100 special assessment as to

1    both Count 1 and Count 3, for a total of $200.

2            Have I correctly stated the guideline

3    provisions, Mrs. Peirson?

4            MS. PEIRSON:  Yes, Your Honor.

5            THE COURT:  Mrs. Pollock?

6            MS. POLLOCK:  Yes, Your Honor.

7            THE COURT:  Statutorily, as for Count 1, there

8    is a mandatory minimum 15 years in prison up to 30 years;

9    for Count 3, zero to ten years.  Supervised release as to

10   Counts, both, 1 and 3:  a mandatory minimum of five

11   years, up to life.  Probation is not a possibility.  A

12   fine range of up to $250,000 as to both Counts 1 and 3,

13   for a total possible $500,000.  I'm not going to impose a

14   fine; I just have to say it for the record.  Restitution

15   of -- it's not applicable; and there is a $100 special

16   assessment as to Counts 1 and 3, for a total of $200.

17           Is that the correct statutory range, Mrs.

18   Peirson?

19           MS. PEIRSON:  Yes, Your Honor.

20           THE COURT:  Mrs. Pollock?

21           MS. POLLOCK:  Yes, Your Honor.

22           THE COURT:  All right.  Mrs. Peirson, is the

23   government going to make any type of a downward departure

24   motion?

25           MS. PEIRSON:  No, Your Honor.

```
 1              THE COURT:  Then I'll take your recommendation
 2    at this time.
 3              MS. PEIRSON:  Your Honor, as the Court notes,
 4    the, the victim impact statements in this case -- I just
 5    want to clarify because I did file them redacted, and it
 6    may be -- may not be obvious who they are from.
 7              The first page that starts, "Frankly, I hate
 8    Talon Wright every day that I see his last name and
 9    automatically think of him," that is from the victim in
10    this case.  She is a teenager now, and she was
11    approximately 11 to 12 years old at the time of this
12    offense.
13              And then "Thoughts from the Parents" are
14    obviously from her parents, and that's a lengthier
15    statement.
16              THE COURT:  It's about a page and a half
17    single-spaced.
18              MS. PEIRSON:  Correct, page and a half
19    single-spaced.
20              Both, both of those statements discuss the
21    betrayal of trust as an overarching theme that they felt,
22    both as parents of this child and of the child herself
23    who was friends with the defendant's daughters; and I
24    thought that that would be significant for the Court to
25    view in light of the statements in support of the
```

USA v. TALON G. WRIGHT, Case No. 14-20069

1   defendant that came, in part, from his daughters.  It's

2   obviously a challenging case for the Court to consider,

3   and it was not easy for the government to make a

4   recommendation either.

5        But in light of all the evidence, in light of

6   the consultation with the victims in this case, the

7   government is recommending a sentence of 15 years on

8   Count 1, 180 months on Count 1; 120 months on Count 2

9   [sic], to run concurrently with each other.

10        The government would leave to the Court's

11   discretion the length of the supervised release.  There

12   are some agreed terms in the plea agreement.  Obviously,

13   the Court can modify and fashion those as the Court sees

14   fit; but the parties have taken some time in fashioning

15   agreed terms and conditions that we think are appropriate

16   in this case that are necessary for the defendant to

17   successfully complete supervised release, as well as

18   balance the danger he poses to the community.

19        We are not asking for a fine.

20        And unless the Court has any specific questions

21   for me, those are my recommendations.

22        THE COURT:  Did you have an agreed -- I didn't

23   see it, unless I overlooked it.  There was no agreed

24   length of supervised release; you just worked through the

25   terms together.  Is that correct?

```
 1            MS. PEIRSON:  That's correct.

 2            THE COURT:  So what would be your

 3  recommendation for the term of supervised release?

 4            MS. PEIRSON:  Your Honor, in my opinion, I

 5  think that a lengthy term of supervised release is often

 6  necessary in this case because -- allowing the defendant

 7  enough time to proceed through treatment -- and they

 8  don't, they don't get a lot of treatment while in the

 9  Bureau of Prisons until the tail end -- that's my

10  understanding, until the tail end of their sentence.  And

11  once they're back out into the community, allowing this

12  defendant an opportunity to identify situations that are

13  high risk for him, places that he should not go or should

14  avoid going, electronic equipment that he should not have

15  is a challenge, living in the modern world; and it's

16  going to be a challenge after, presumably, a 15-year

17  sentence.

18            So it's my recommendation that the Court give

19  him at least another ten years on supervised release,

20  with the guidance of Probation to navigate that somewhat

21  of a minefield of living back out in the community and

22  having treatment and other resources available to him to

23  successfully complete.

24            THE COURT:  All right.  Thank you.

25            Mrs. Pollock, your recommendation.
```

1          MS. POLLOCK:  Your Honor, we concur with the

2    government's recommendation with regards to the time in

3    the Bureau of Prisons.  Obviously, Mr. Wright is facing a

4    mandatory minimum of 180 months on Count 1; the maximum

5    of 120 months on Count 3.  We'd recommend both of those

6    to be imposed concurrently to each other.

7          Briefly, addressing the nature and

8    circumstances of the offense in this case, the

9    exploitation count is based on a three-minute video that

10   was taken several years ago.  When his computer was

11   searched, there was no evidence that he had engaged in

12   any other type of conduct resembling this; nor does the

13   video itself represent what we often see in exploitation

14   cases, which can include penetration and masturbation and

15   things of that nature.  It simply is a pretty low-level

16   offense when you're talking about exploitation.

17          And even with regards to the pornography, he

18   didn't -- he received a three-level enhancement for

19   number of images, which is a lower number than we really

20   ever see in pornography possession cases.  So the nature

21   and circumstances of the offense are what I would say on

22   the less serious end compared to what we normally see in

23   this courtroom.

24          Additionally, when looking at his personal

25   history and characteristics, Mr. Wright -- Mr. Wright has

1   almost no discernible criminal history, has made it

2   through the majority of his adult life, even having been

3   challenged in his family situation and challenged with

4   his children when the mother of his children lost custody

5   of them by DCFS and Court order.  And he went through all

6   of the counseling that was recommended, completed it

7   successfully, and was able to obtain custody of his very

8   small daughters at that time and has raised them up since

9   then very successfully.  He has proven his ability to

10  comply with Court-ordered treatment; he wouldn't have

11  obtained custody of his daughters otherwise.

12          And he has worked the majority of his adult

13  life.  As a matter of fact, his job when he was arrested

14  was as a property manager where he held responsibility

15  for multiple multi-unit properties throughout the city of

16  Urbana; and he has done so successfully for his entire

17  time as an adult.

18          So, overall, all of his 3553(a) factors

19  militate in favor of a minimum sentence in this case on

20  Count 1.

21          In regards to the supervised release term, the

22  defendant is recommending five years of supervised

23  release.  That's the minimum available by statute.  He

24  has, as I said, shown the ability to comply with

25  Court-ordered conditions.  He has attended Court-ordered

1    counseling and completed it successfully.  Five years is

2    not a small amount of time.  Any treatment that he

3    receives can very conceivably be completed in a five-year

4    period.

5              And additionally -- in addition to supervised

6    release, he's going to have a lifetime sex offender

7    registration requirement; so he's not going to be

8    unmonitored.  He's going to have to report annually for

9    the rest of his life as long as he stays in the state of

10   Illinois.  They'll be able to keep track of him, where

11   he's living and where he's working and, if he goes to

12   school, where he goes to school; so it's not as though

13   he's not going to be unmonitored.

14             THE COURT:  Hold on.  Sex offender

15   registration, though, is different than supervised

16   release, so I want to make sure I'm understanding.  In

17   your opinion, it's in your client's best interests to

18   have the minimum period of supervised release, not,

19   not -- you don't, you don't want him to have any

20   additional cushion, just that, the bare minimum?

21             MS. POLLOCK:  The minimum is a long time.  Five

22   years is a long time for somebody to be on supervised

23   release.

24             THE COURT:  But in these type of cases, you

25   know, in my experience, in some of those treatment

USA v. TALON G. WRIGHT, Case No. 14-20069

1    programs, you'll be lucky to complete it within five

2    years.  So I'm just asking -- I mean, it's your

3    recommendation; he's your client -- you think it's in his

4    best interests to give him the absolute bare minimum?

5              MS. POLLOCK:  I think five years is long

6    enough.

7              Now, if the Court has more experience with sex

8    offender treatment programs than I do and thinks it will

9    take him longer to complete them, then by all means a

10   little bit more wouldn't hurt; but five years is a pretty

11   long period of time for him to be on supervised release

12   and --

13             THE COURT:  Let me be clear.  It's not just

14   completing it.  It's you complete it, and then there's

15   follow-up; and then there's -- you know, you can have

16   periodic meetings afterwards.

17             The reason I'm asking is:  As you know, the

18   Court of Appeals has told me that I have to tailor these

19   things, these terms of supervised release, to be

20   specific, and the length of the term -- and I can always

21   modify them when the person is out.

22             So I'm asking you -- and I don't mean to put

23   you on the spot, but I am -- do you think it would be in

24   your client's best interests to give him a longer term of

25   supervised release and then, if necessary, reduce it

USA v. TALON G. WRIGHT, Case No. 14-20069

1    because once he's off supervised release the money stops

2    flowing from the federal government for his treatment.

3    He's done; it's out of his pocket.  So I guess that sums

4    it up.

5            So you think it's in your client's best

6    interests that I make it the bare minimum because, if he

7    gets out, I can't -- you know, increasing it's not really

8    an option.  I mean, I suppose who knows what the Court of

9    Appeals will say in however many years from now we're

10   facing this issue --

11           MS. POLLOCK:  Or tomorrow.

12           THE COURT:  Or tomorrow.

13           But taking into account what they've said, I'm

14   just trying to get a handle on what you're doing -- what

15   you're doing and why you're saying it.

16           So you are saying you just want me to impose

17   just the bare minimum, the statutory five years, and

18   that's it?

19           MS. POLLOCK:  I think what we're -- where we're

20   getting our messages crossed, perhaps, is that, you

21   know -- and in a lot of these cases, up to a lifetime of

22   supervised release is authorized by statute.  It used to

23   be that a lot of people got a lifetime of supervised

24   release.

25           THE COURT:  It is in this case as well, and --

USA v. TALON G. WRIGHT, Case No. 14-20069

1          MS. POLLOCK:  I definitely --

2          THE COURT:  -- I can tell you I'm not headed

3    that direction.

4          MS. POLLOCK:  I can definitely tell you I don't

5    believe a lifetime of supervised release is financially

6    responsible or necessary for a lot of people.

7          In his case, you know, he, he had no criminal

8    history prior to this.  He has shown the ability to

9    comply with program treatment conditions and complete

10   them successfully.  So it is our hope that whatever

11   programming is available to him, he will be able to

12   complete it successfully.

13         If the Court believes that an additional period

14   of supervised release is necessary to give him that

15   opportunity, we wouldn't disagree with that.  You know,

16   my experience is that five years is enough time for them

17   to get in a treatment program, complete it, and be

18   discharged from it successfully.

19         I don't see him as re-offending in any way.  I

20   don't think he has some of the same risks as a lot of

21   other people with these similar charges that I have

22   represented personally, so I think his likelihood of

23   success on supervised release is extremely high.

24         If the Court believes that additional time

25   could be valuable to him and then we could shorten it

1  after the fact if that needs to happen, then we would be

2  okay with that.

3           THE COURT:  All right.  I didn't mean to cut

4  you off.

5           MS. POLLOCK:  That's fine.

6           THE COURT:  Do you want to say anything else?

7           MS. POLLOCK:  No.

8           THE COURT:  All right.

9           Mr. Wright, you have the right to allocution.

10  That's the fancy way -- you have the right to come up

11  here and make a statement.  I've learned to tell people:

12  You don't have to if you don't want to; you're not

13  required to.

14           Some people want to come up and talk to the

15  people in the audience.  Some people want to come up and

16  talk to the people in the courtroom, talk to me.  If you

17  want to, come on up.  If you don't want to, that's

18  totally fine.  It doesn't go against you in any way.

19               (Brief pause in proceedings.)

20           DEFENDANT WRIGHT:  One --

21           THE COURT:  Take your time.

22           DEFENDANT WRIGHT:  Can you give me one second?

23           THE COURT:  If you need Mrs. Pollock to read it

24  on your behalf, she's -- she has done that many times

25  before also.  So if you can't read because of emotional

USA v. TALON G. WRIGHT, Case No. 14-20069

1    reasons, she can take it.

2            DEFENDANT WRIGHT:  I'll do this, Your Honor.

3            THE COURT:  Okay.

4            DEFENDANT WRIGHT:  I wrote a letter because I

5    didn't know what I might say --

6            THE COURT:  Sure.

7            DEFENDANT WRIGHT:  -- or what to say or -- I

8    don't want to, you know, have something and then forget

9    and not know and stumble; so I wrote a letter to you, if

10   you'd allow me to read it.

11           I wrote:  Dear Honorable Judge Bruce -- I'm

12   going to be emotional a little bit, so --

13           THE COURT:  Take your time.

14           DEFENDANT WRIGHT:  All right.  I'm a fatherless

15   son who has made a grievously errorous [sic] mistake.  I

16   ask for you -- I ask for your forgiveness, and I beg for

17   your mercy.

18           I am a good man and a good father who works

19   very hard to raise my children on my own since they were

20   one and a half and six months old until now at 14 and

21   15 years old.

22           I do not drink, smoke, or do drugs of any kind.

23   I work hard to help people and solve problems.  I have a

24   great deal of coping skills.  I also have worked on

25   improving myself constantly by pushing negative and bad

1   habits away and applying -- applying plus strengthening

2   away -- okay -- and applying good ones, plus

3   strengthening good habits.

4          A habit can break habits, as I have broken many

5   in my life.  I am a family-oriented -- I love my family.

6   I love people.  Most of all, I love God.  I believe

7   people are born good.  Because of things in their life --

8   stressors, abandonments, rejection, traumas, mental

9   illnesses, depression and, how they've been taught and

10  raised -- has them doing bad.  I'm not perfect; not a

11  lack of trying to do my best to do right.  I make

12  mistakes, even grievously errorous [sic] ones.

13         I plead with you to show me mercy.  I beg of

14  you not to throw my life away, for the sake of my family

15  and for the sake of my children.  The anxiety, stress,

16  fear, loss of everything I have worked so hard on -- that

17  I will not repeat the same offense.  I will never go

18  through this again.  I promise.  And with lowly meekness

19  and humility, Talon Wright.

20         THE COURT:  Thank you, Mr. Wright.

21         DEFENDANT WRIGHT:  Thank you, Your Honor.

22         THE COURT:  All right.  I'm taking the

23  sentencing guidelines into account on an advisory basis.

24  I am applying the factors set forth in 18 USC Section

25  3553(a).  I understand and believe that the sentence I am

USA v. TALON G. WRIGHT, Case No. 14-20069

1   imposing is sufficient, not greater than necessary, to

2   comply with both the sentencing guidelines and the

3   Section 3553(a) factors.

4           Looking at this case, this is a sad case.  Mr.

5   Wright, you had some rough parts in your life.  You tried

6   to overcome them.  You -- the majority of them you did

7   overcome.  You obviously have children that you look

8   after, and they look up to you.

9           And then you engaged in this really bad

10  conduct, the conduct in Count 1, the sexual exploitation

11  of a minor.  That was really bad.  And then you

12  collected -- not a lot of child -- I mean, I've seen

13  cases with thousands and thousands of videos and images.

14  You didn't collect a whole lot, but you collected enough.

15  It wasn't a mistake.  You went down the wrong path and

16  not just a few steps.  You went down that path fairly

17  far.

18          But I think, by and large, you are trying to

19  correct your mistakes.  Everybody makes mistakes.  I try

20  to avoid labels like, "You're a bad person.  You're a

21  good person."  Everybody is really a combination of a lot

22  of different people.  You were a bad person when you did

23  certain things.  You were a good person when you did

24  other things.

25          I don't really see a need, based on your

USA v. TALON G. WRIGHT, Case No. 14-20069

1    character and all the factors -- everything set forth,

2    the facts set forth in the presentence report -- I don't

3    see any need to sentence you to more than the bare

4    minimum.  Unfortunately for you, the bare minimum in this

5    case is 180 months.  That's 15 years.  I can't -- that's

6    what Congress mandated.  That's what it is.

7              In terms of supervised release -- Mrs. Pollock,

8    I forgot to ask:  I did not do a one-for-one match-up,

9    word-for-word; but it appeared to me that, essentially,

10   the terms specified in the presentence report were the

11   same terms in the plea agreement.

12             Is that correct?

13             MS. POLLOCK:  That is correct.

14             THE COURT:  Mrs. Peirson, do you agree?

15             MS. PEIRSON:  In the revised presentence

16   report, yes, Your Honor.

17             THE COURT:  In the revised presentence report,

18   right.

19             So you have no objections whatsoever to the

20   terms of supervised release?

21             MS. POLLOCK:  No.  We do not.

22             THE COURT:  Do you wish me to have any further

23   explanation about any of the words or meanings in

24   those -- again, not that your answer will have any effect

25   upon what Mr. Patton thinks, but do you believe that

USA v. TALON G. WRIGHT, Case No. 14-20069

1     there's anything that needs to be further explained?

2            MS. POLLOCK:  No.  I do not.

3            THE COURT:  Have you discussed those with your

4     client?

5            MS. POLLOCK:  Yes.  We went over them in

6     detail.

7            THE COURT:  Does he need any further

8     explanation?

9            MS. POLLOCK:  No.

10            THE COURT:  Okay.  All right.  So as far as the

11     length of supervised release, Mr. Wright, I'm going to

12     tell you my concern; and I'm going to -- I don't want you

13     to get out and be doing well and be going through a

14     program and be having periodic meetings every, after

15     you've completed the program successfully -- because I

16     think you will -- and then you have meetings every four

17     months or meetings every six months and suddenly it's

18     five years; and they start telling you, "Okay.  It's

19     going to cost you money if you want to keep going."  And

20     you might want to keep going, and you might not.

21            So I'm going to impose -- when I actually

22     pronounce the formal sentence, I'm going to tell you

23     right now I'm going to impose a period of ten years of

24     supervised release.  But when you get out, if you're

25     doing fine, talk to your probation officer.  If five

USA v. TALON G. WRIGHT, Case No. 14-20069

1    years are good enough, I'll just cut it down to five.

2    Good enough?  Understand?

3              So I'm trying to look out for your best

4    interests.  I don't want you to be in a situation where

5    your supervised release term runs out, which means money

6    runs out also; federal money runs out; and you're paying

7    for stuff out of your own pocket.

8              DEFENDANT WRIGHT:  Right, and then I couldn't

9    afford it.  I understand, Your Honor.

10             THE COURT:  All right.  All right.  I have read

11   all of the terms of supervised release.  I believe that

12   all of them are appropriate.

13             I'm going to ask Mr. Morris to provide the

14   rationale at the appropriate times.  Whatever he says is

15   the rationale for the Court imposing these conditions.  I

16   presume he's going to read what he and I have discussed,

17   what's set forth in the Court's documentation from the

18   Probation Office that I've gone over.  It is -- his words

19   are as though I spoke them myself, and it is the intent

20   of this Court that his oral statements be taken as though

21   I had spoken them myself.

22             So with that being said, it is -- pursuant to

23   the Sentencing Reform Act of 1984, the defendant, Talon

24   G. Wright, is hereby committed to the custody of the

25   Bureau of Prisons for a period of 180 months on Count 1;

1    120 months on Count 3, to run concurrently.

2              The Court finds the defendant does not have the

3    ability to pay a fine.  No fine is imposed.

4              Following your release from custody, you shall

5    serve a ten-year term of supervised release on each of

6    Counts 1 and 3 to run concurrently.  Remember what I

7    said:  When the five years are up, come in.  If you're

8    doing great or you don't want any more, I'll cut it down

9    to five.

10             Within 72 hours of your release from custody

11   from the Bureau of Prisons, you shall report in person to

12   the Probation Office in the district to which you are

13   released.

14             While on supervised release, you shall not

15   commit another federal, state, or local crime.

16             You shall not possess a controlled substance.

17             You shall submit to one drug test within

18   15 days of release from imprisonment; two drug tests

19   thereafter, as directed by the probation officer.

20             Pursuant to statute, you shall cooperate in the

21   collection of DNA as directed by the probation officer or

22   the Bureau of Prisons.

23             You shall further comply with these following

24   additional terms and conditions of supervised release.

25             You shall not knowingly leave the judicial

 1  district without the permission of the Court or probation

 2  officer.

 3          You shall report to the probation officer in a

 4  manner and frequency directed by the Court or probation

 5  officer.

 6          You shall not knowingly make -- you should not

 7  knowingly answer falsely the probation officer's

 8  questions and shall follow the instructions of the

 9  probation officer as they relate to the defendant's

10  conditions of supervision.

11          You shall notify the probation officer of any

12  change in residence, employer, or workplace within

13  72 hours.

14          All of those are administrative requirements.

15  They are necessary incident to supervision.

16          All right.  Mr. Morris, you ready to assist me?

17          PROBATION OFFICER MORRIS:  Yes, Your Honor.

18          THE COURT:  You shall permit a probation

19  officer to visit you at your home or elsewhere between

20  the hours of 6:00 a.m. and 11:00 p.m., unless

21  investigating a violation or in case of emergency.  You

22  shall permit confiscation of any contraband observed in

23  plain view of the probation officer.

24          PROBATION OFFICER MORRIS:  Pursuant to Title

25  18, U.S. Code, Section 3603(2) and (4), the U.S.

USA v. TALON G. WRIGHT, Case No. 14-20069

1    probation officer is statutorily required to keep

2    informed of the conduct and condition of a person under

3    supervision.  The U.S. probation officer must conduct

4    visits with the person on supervision in his home or

5    elsewhere to meet the statutory requirements.

6            Pursuant to Title 18, U.S. Code, Section

7    3553(a)(1) and (2), in order to protect the public from

8    further crimes of a person under supervision, the U.S.

9    probation officer must be allowed to confiscate any

10   contraband in plain view.

11       THE COURT:  You shall notify the probation

12   officer within 72 hours of being arrested or questioned

13   by a law enforcement officer.

14       PROBATION OFFICER MORRIS:  Pursuant to Title

15   18, U.S. Code, Section 3603(2) and (4), the

16   U.S. probation officer is statutorily required to keep

17   informed of the conduct and condition of a person under

18   supervision.

19           Pursuant to Title 18, U.S. Code, Section

20   3553(a)(1) and (2), in order to protect the public from

21   further crimes of a person under supervision, the U.S.

22   probation officer must be aware of any contact the

23   supervisee has with law enforcement to determine if he is

24   involved in criminal activity.

25           THE COURT:  As directed by the probation

1    officer, you shall participate in a psychological and

2    behavioral testing, evaluation, and assessment program

3    for the treatment and monitoring of sex offenders and a

4    sex offender group and/or individual counseling program.

5    You shall comply with all requirements and restrictions

6    of such programs.

7              You shall submit to physiological testing,

8    including polygraph and plethysmograph testing, as

9    directed by the treatment provider.  You shall pay for

10   such services, if financially able, as directed by the

11   U.S. Probation Office.

12             PROBATION OFFICER MORRIS:  The defendant

13   engaged in inappropriate sexual contact with a minor and

14   produced a video depiction of this act.  He further

15   captured a still screen shot of the video.  The defendant

16   also possessed child pornography images on his computer.

17             Although sex offender treatment is not a cure,

18   it seeks to assist the defendant with finding appropriate

19   sexual relationships while teaching him the skills to

20   avoid any behaviors that might trigger him to re-offend

21   against a minor either through hands-on abuse or viewing

22   of child pornography.  Treatment is a means to break the

23   cycle of abuse and is a tool to prevent the defendant

24   from re-offending by avoiding triggers to re-offend and

25   addressing characteristics, such as low self-esteem and

2:14-cr-20069-CSB-DGB  # 37  Page 27 of 39

1    social isolation, which lead him to make sexually

2    unhealthy decisions.  Without treatment, the defendant

3    will not learn to identify his triggers, nor will he

4    learn behaviors that will enable him to engage in

5    appropriate relationships, and the cycle of abuse will

6    likely continue.

7            THE COURT:  You shall have -- you shall have no

8    knowing association with; have verbal, written,

9    telephonic, or electronic communication with; or have

10   physical contact with any female under the age of 18

11   except:  (1) in the presence of an adult who is aware of

12   the nature of your background and current offense, and

13   who has been approved by the U.S. Probation Office; (2)

14   in the course of normal commercial business; or (3) in

15   other cases of unintentional and incidental contact.

16           PROBATION OFFICER MORRIS:  The imposition of

17   this condition is a tool to prevent the defendant from

18   re-offending by avoiding triggers to re-offend and

19   address characteristics which lead him to make sexually

20   unhealthy decisions.

21           The defendant engaged in inappropriate sexual

22   conduct -- contact with an 11-year-old female who was

23   spending the night at his residence.  The victim was a

24   friend of the defendant's daughters, and he was in a

25   position of trust when this incident occurred.

USA v. TALON G. WRIGHT, Case No. 14-20069

1          This condition is necessary to limit the

2    defendant's contact with minors, which, if not limited,

3    could trigger him to re-offend based on his history.

4          THE COURT:  You shall not knowingly receive,

5    transmit, have under your control, or view any illegal

6    material that depicts sexually explicit conduct as

7    defined in 18 USC Section 2256(2)(A) and (B).

8          PROBATION OFFICER MORRIS:  In the present case,

9    the defendant produced a video of the sexual contact with

10   an 11-year-old female.  He also created a still image

11   from the video.  He possessed additional images of child

12   pornography on his computer.

13         The basis for this condition is to prevent the

14   defendant from re-offending by avoiding triggers to

15   re-offend and address characteristics which lead him to

16   make sexually unhealthy decisions.

17         THE COURT:  You shall participate with the U.S.

18   Probation Office's Computer and Internet Monitoring

19   Program during your term of supervision.  The monitoring

20   program will start as soon as possible after your

21   supervision term begins.  You shall sign the rules of the

22   Computer Internet and Monitoring Program and comply with

23   the conditions of this program.  During this time, you

24   shall install filtering software on any computer you

25   possess or use which will monitor access to websites that

1    depict illegal sexually explicit conduct as defined in 18

2    USC, Section 2256(2)(A) and (B).

3         You shall allow the U.S. Probation Office

4    unannounced access to any computer you possess or use to

5    verify that the filtering software is functional.  You

6    shall pay for the costs of the filtering software, if

7    financially able, as directed by the U.S. Probation

8    Office.

9         PROBATION OFFICER MORRIS:  The defendant

10   utilized a computer to access and download images of

11   child pornography which were located on his computer.

12   The imposition of this condition will limit the

13   defendant's access to inappropriate websites.

14        Further, it is a tool to reduce re-offending by

15   avoiding triggers to re-offend and address

16   characteristics which lead him to make sexually unhealthy

17   decisions.

18        Computer monitoring is an important tool for

19   the Probation Office to enable the officer to quickly

20   address the defendant accessing inappropriate material

21   which may be a trigger to re-offend.  Such access is, may

22   be addressed in treatment.

23        THE COURT:  You agree that if there is a

24   reasonable suspicion to believe that you are in violation

25   of a condition of supervised release related to the

USA v. TALON G. WRIGHT, Case No. 14-20069

1  receipt, transmission, or possession of any illegal

2  material that depicts sexually explicit conduct, or any

3  violation of the Computer and Internet Monitoring

4  Program, or any violation of your sex offender treatment

5  program, you will submit to the search of your person,

6  automobile, and property under your control by the U.S.

7  Probation Office.

8        You will allow the U.S. Probation Office to

9  conduct periodic unannounced examinations between the

10  hours of 6:00 a.m. and 11:00 p.m., unless investigating a

11  violation or in case of an emergency, of your computer

12  equipment, Internet capable devices, similar electronic

13  devices, or related computer peripherals, which may

14  include retrieval and copying of all data from your

15  device to assure compliance with this condition, and/or

16  removal of such equipment for the purpose of conducting a

17  more thorough inspection.

18        PROBATION OFFICER MORRIS:  This condition is

19  utilized by the Court and the U.S. Probation Office to

20  ensure the defendant is complying with conditions of

21  supervised release and that he has had no contact with

22  minors.

23        The defendant had inappropriate sexual contact

24  with a minor female.  He has clearly developed a sexual

25  interest in minors; and in order to protect the

USA v. TALON G. WRIGHT, Case No. 14-20069

1    community, the Probation Office must be able to assure he

2    is not having contact with minors or accessing child

3    pornography.

4           If the Probation Office has reasonable

5    suspicion that these activities are occurring, a search

6    of his person, automobile, and property is an essential

7    tool to determine if, in fact, the defendant is having

8    inappropriate contact with minors.

9           THE COURT:  You shall not knowingly use the

10   Internet or visit any website, including chat rooms or

11   bulletin boards, to view illegal materials depicting

12   sexually explicit conduct as defined in 18 USC, Sections

13   2256(2)(A) and (B).

14          PROBATION OFFICER MORRIS:  The defendant

15   downloaded child pornography from the Internet, which

16   images he maintained on his computer.  The imposition of

17   this condition will limit the defendant's access to

18   inappropriate websites.

19          Further, it is a tool to reduce re-offending by

20   avoiding triggers to re-offend and address

21   characteristics which lead him to make sexually unhealthy

22   decisions.  Computer monitoring is an important tool for

23   the probation officer to enable the officer to quickly

24   address the defendant accessing inappropriate material

25   which may be a trigger to re-offend.  Such accesses can

USA v. TALON G. WRIGHT, Case No. 14-20069

1    be addressed in treatment.

2            THE COURT:  You shall register with the state

3    sex offender registration agency in any state where you

4    reside, are employed, carry on a vocation, or are a

5    student, as directed by the Probation Office.

6            PROBATION OFFICER MORRIS:  Because of the

7    defendant's conviction in the instant federal offense, he

8    is required to register under the Sex Offender

9    Registration and Notification Act, 18 USC Section

10   3583(d).

11           THE COURT:  You shall not knowingly possess a

12   destructive device as defined in 18 USC Section

13   921(a)(4), or any object that you intend to use as a

14   dangerous weapon as defined in 18 USC Section 930(g)(2).

15           PROBATION OFFICER MORRIS:  Pursuant to Title

16   18, U.S. Code, Section 3603(2) and (4), the U.S.

17   probation officer is statutorily required to keep

18   informed of the conduct and condition of a person under

19   supervision.  The U.S. probation officer must conduct

20   visits with the person on supervision in his home and

21   must be aware of address changes and his current

22   whereabouts to meet these statutory obligations.

23           A prohibition on the possession of dangerous

24   weapons or destructive devices is one measure of

25   protection for officers conducting home visits.  Any

1    defendant convicted of a felony offense is statutorily

2    prohibited from possessing a firearm or ammunition under

3    both federal and state law.  The imposition of this

4    condition additionally protects the public and probation

5    officers from further crimes of the defendant as

6    suggested in Title 18, U.S. Code, Section 3553(a)(2)(C).

7              THE COURT:  A special assessment of $200 is

8    imposed.  It is due and payable immediately.

9              The Court hereby orders the forfeiture of all

10   property listed in the preliminary order of forfeiture.

11             Mrs. Pollock, would you like me to recite into

12   the record each item of equipment and its serial number,

13   or will you waive me reading that into the record?

14             MS. POLLOCK:  Your Honor, we will waive you

15   reading that into the record.

16             And I did want to note:  I believe the plea

17   agreement anticipates Ms. Peirson formally dismissing

18   Count 2.  He's pled to Counts 1 and 3.  I don't know if

19   that's in there yet, but we'd request that.

20             THE COURT:  I'm getting to that.

21             MS. POLLOCK:  Thank you, Your Honor.

22             THE COURT:  All right.  So the Court orders

23   the -- Ms. Peirson, I shouldn't have cut you off.  Do you

24   want me to read all those serial numbers into the record?

25             MS. PEIRSON:  No, thank you.

USA v. TALON G. WRIGHT, Case No. 14-20069

1          THE COURT:  Okay.  The Court orders the

2     defendant to forfeit all property that's in the

3     preliminary order of forfeiture that involves various

4     computer equipment, including desktop computers, hard

5     drives, several cell phones, et cetera, et cetera.  They

6     are listed in the preliminary order of forfeiture.  The

7     Court will adopt all of the contents therein as though I

8     spoke them myself.

9          For that matter, I'll reiterate that whatever

10    Mr. Morris said is the, is the rationale for each of the

11    conditions.  He did so after I reviewed the rationale,

12    and I adopt everything he said as though I spoke the

13    rationale myself.

14          It is recommended that the defendant serve his

15    sentence in a facility as close to his family in

16    Champaign, Illinois, as possible.

17          It is further recommended that he serve his

18    sentence in a facility that will allow him to participate

19    in a sex offender treatment program and maximize his

20    exposure to educational and vocational opportunities.

21          MS. POLLOCK:  Your Honor, might I interrupt

22    just briefly?

23          THE COURT:  Yes.

24          MS. POLLOCK:  In doing a survey of BOP

25    facilities available within the region, Mr. Wright is

1  hoping to be placed in Milan, Michigan, which is a low

2  security facility which offers the majority of those

3  programs.  We would request a specific recommendation to

4  FCI Milan.

5           THE COURT:  The Court further recommends the

6  defendant be placed in FCI Milan, if at all possible.

7           Mrs. Peirson, are you moving to dismiss Count 2

8  at this time?

9           MS. PEIRSON:  Yes, please, Your Honor.

10          THE COURT:  Count 2 is dismissed with prejudice

11  at this time on motion of the United States.

12          All right.  Mrs. Peirson, do you require any

13  further explanation of the Court's reasons for imposing

14  this sentence?

15          MS. PEIRSON:  No, Your Honor.

16          THE COURT:  Mrs. Pollock?

17          MS. POLLOCK:  No, Your Honor.

18          THE COURT:  Mrs. Peirson, is there anything

19  unclear or confusing, or have I made any mistakes of

20  which you are aware at this time that need to be

21  corrected?

22          MS. PEIRSON:  No, Your Honor.

23          THE COURT:  Mrs. Pollock?

24          MS. POLLOCK:  No, Your Honor.

25          THE COURT:  Mrs. Pollock, do you believe I've

USA v. TALON G. WRIGHT, Case No. 14-20069

1  addressed all of your arguments that you raised here
2  today?

3          MS. POLLOCK:  Yes, Your Honor.

4          THE COURT:  Do you require any further
5  explanation or definition as to any term that I used?

6          MS. POLLOCK:  No.

7          THE COURT:  All right.  Mr. Wright, let me
8  explain to you your various appeal rights.  You entered
9  into a plea agreement where you waived some of those
10  rights; but you retained, specifically retained the
11  ability to appeal the denial of your motion to suppress.

12          You can appeal your conviction if you believe
13  that your guilty plea was somehow unlawful or
14  involuntary, or if there was some other fundamental
15  defect in the proceeding that was not waived by your
16  guilty plea.

17          Under some circumstances, a defendant also has
18  the right to appeal the sentence; however, a defendant
19  may waive that right as part of his plea agreement.

20          You have entered into a plea agreement which
21  waives some or all of your rights to appeal the sentence
22  itself.  Such waivers are generally enforceable; but if
23  you believe the waiver itself is not valid, you can
24  present that theory to the Court of Appeals, as well as,
25  pursuant to the plea agreement, the appeal of the denial

```
1    of your motion to suppress.

2              Any Notice of Appeal must be filed within

3    14 days of the entry of judgment, or within 14 days of

4    the filing of a Notice of Appeal by the government.

5              If you request, the Clerk of the Court will

6    prepare and file a Notice of Appeal in your behalf.

7              You can also direct your attorney to file a

8    Notice of Appeal, or you can file one yourself.

9              If you cannot afford to pay the costs of an

10   appeal, or the costs of an attorney to represent you on

11   appeal, you have the right to apply to have the Court

12   waive the filing fee and to ask for a Court-appointed

13   attorney on appeal.

14             Do you understand those appellate rights I just

15   explained to you?

16             DEFENDANT WRIGHT:  Yes, Your Honor.

17             THE COURT:  Do you have any questions about any

18   of them?

19             DEFENDANT WRIGHT:  No, Your Honor.

20             THE COURT:  You sure?  You kind of hesitated.

21   Do you want me to explain something to you?  Do you want

22   to ask Mrs. Pollock about it?

23             DEFENDANT WRIGHT:  No.

24             THE COURT:  No.  You're okay?

25             DEFENDANT WRIGHT:  Yeah.  I'm okay.
```

USA v. TALON G. WRIGHT, Case No. 14-20069

1           THE COURT:  All right.  Anything further on

2     behalf of the United States, Mrs. Peirson?

3           MS. PEIRSON:  Your Honor, I just want to

4     reiterate -- I think it's clear in the plea agreement --

5     the government's agreement with the defendant was to

6     dismiss Count 2 and also for the recommendations that we

7     made to the Court in this case.  As part -- part of the

8     waivers in this case took into account that dismissal;

9     and we limited the appeal to that motion, the denial of

10    the motion to suppress.

11          So I guess that's kind of an ineloquent way of

12    me saying that if the defendant chooses to raise an issue

13    on appeal that we believe has been waived under the plea

14    agreement, the government's position is likely going to

15    be that we will have an opportunity to explore that

16    motion that we made to dismiss and any other issues that

17    we have -- concessions that we made to him as part of the

18    plea agreement.

19          THE COURT:  I think that was certainly clear to

20    the Court.  That was -- I presume that was your

21    understanding, too, Ms. Pollock?

22          MS. POLLOCK:  That's correct.

23          THE COURT:  I mean, you negotiated the

24    agreements, so it had to be part of the negotiations.

25          MS. POLLOCK:  The appeal will be limited to the

USA v. TALON G. WRIGHT, Case No. 14-20069

```
 1   denial of the motion to suppress, and I will take care of

 2   all documents.

 3             THE COURT:  All right.  Anything else you want

 4   to raise, Mrs. Peirson?

 5             MS. PEIRSON:  No, Your Honor.

 6             THE COURT:  Mrs. Pollock, anything you want to

 7   raise?

 8             MS. POLLOCK:  No, thank you.

 9             THE COURT:  All right.  That will be all for

10   the record.  The defendant is remanded to the custody of

11   the United States Marshal Services.

12             Good luck, Mr. Wright.

13             (Hearing concluded, 3:15 p.m.)

14             *  *  *  *  *  *  *  *  *  *

15             REPORTER'S CERTIFICATE

16        I, LISA KNIGHT COSIMINI, RMR-CRR, hereby certify

17   that the foregoing is a correct transcript from the

18   record of proceedings in the above-entitled matter.

19        Dated this 12th day of October, 2015.

20

21             s/Lisa Knight Cosimini
             ─────────────────────────
             Lisa Knight Cosimini, RMR-CRR
22             Illinois License # 084-002998

23

24

25
```