# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

October 17, 2016

To:     Kenneth A. Wells
        UNITED STATES DISTRICT COURT
        Central District of Illinois
        U.S. Courthouse
        Urbana , IL 61802-3369

| No. 15-3109 | UNITED STATES OF AMERICA,<br>Plaintiff - Appellee<br><br>v.<br><br>TALON G. WRIGHT,<br>Defendant - Appellant |
|---|---|
| **Originating Case Information:** | |
| District Court No: 2:14-cr-20069-CSB-DGB-1<br>Central District of Illinois<br>District Judge Colin S. Bruce | |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:          No record to be returned

This notice sent to:

[]      United States Marshal              [x]      United States Probation Officer

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                          **Received by:**

   10/17/16                                            s/S. Romito

__          _____              ___          _____

form name: **c7_Mandate**(form ID: **135**)

CERTIFIED COPY

A True Copy

Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit



In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 15-3109

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TALON G. WRIGHT,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Central District of Illinois.
No. 14-cr-69 — **Colin S. Bruce**, *Judge.*

———————————

ARGUED APRIL 18, 2016 — DECIDED SEPTEMBER 23, 2016

———————————

Before EASTERBROOK and SYKES, *Circuit Judges*, and
ADELMAN, *District Judge.*[*]

SYKES, *Circuit Judge.* A day after police responded to a
domestic dispute between Talon Wright and Leslie
Hamilton, an investigator returned to the couple's apartment
to follow up on suspicions that Wright was in possession of
child pornography. With Hamilton's consent, the investiga-

———————————

[*] Of the Eastern District of Wisconsin, sitting by designation.

tor searched the apartment and conducted a forensic pre-view of a desktop computer found in the living room. The preview revealed images of child pornography on the hard drive. Wright was indicted on child-pornography and child-exploitation charges. He moved to suppress the evidence recovered from the warrantless search of his computer, arguing that Hamilton lacked authority to consent. The district judge denied the motion. Wright pleaded guilty but reserved his right to appeal the denial of suppression and now does so.

We affirm. Although Wright owned the desktop comput-er, Hamilton was a joint user who enjoyed virtually unlim-ited access to and control over it. The computer was located in the living room of the couple's apartment, and everyone in the family, including Hamilton and her children, used it freely. These facts, which were conveyed to the investigator prior to the search and later confirmed through further investigation, establish Hamilton's common authority over the computer.

## I.  Background

On July 31, 2014, police officers in Urbana, Illinois, re-sponded to a domestic dispute between Wright and Hamil-ton. In their incident report, the responding officers noted that Hamilton called Wright a "pedophile" during the altercation. Apparently no arrests were made that day.

The following morning Urbana Police Investigator Tim McNaught, who specializes in handling crimes against children, reviewed the officers' report as a matter of course. Concerned about Hamilton's use of the word "pedophile," Investigator McNaught contacted her and requested a

No. 15-3109                                                    3

meeting. Hamilton arrived at the police station that same
morning. In this initial interview, Investigator McNaught
sought Hamilton's permission to search the couple's apart-
ment and computers for evidence of child pornography.
Hamilton agreed and took McNaught to the apartment.

During the search, McNaught seized a desktop computer
he found in the living room; forensic analysis revealed
images of child pornography on the hard drive. Wright was
charged with one count of possessing child pornography,
18 U.S.C. § 2252A, and two counts of sexually exploiting a
minor, *id.* § 2251. He moved to suppress the evidence recov-
ered from the desktop computer, arguing that Hamilton
lacked authority to consent to the warrantless search.

At the evidentiary hearing that followed, Investigator
McNaught testified about three different encounters with
Hamilton on the day of the search: (1) the initial interview
conducted prior to the search; (2) a discussion that occurred
during the search itself; and (3) a lengthier post-search
interview.

First, Investigator McNaught described the brief inter-
view with Hamilton that took place at the Urbana police
station before the search of the apartment and computer. In
that interview McNaught asked Hamilton why she called
Wright a pedophile. Hamilton responded that Wright had
used his cellphone to visit a website called "Jailbait." Inves-
tigator McNaught recognized "Jailbait" as a site that features
pornographic images of underage girls. Hamilton also
mentioned seeing a video with a disturbing title on the
family's home computer. Based on this information,
McNaught asked Hamilton for permission to search the

couple's apartment and computers for evidence of child pornography, and Hamilton agreed.

Next, Investigator McNaught testified about the search itself. He explained that Hamilton took him to the apartment that she shared with Wright and let him in using her key. Once inside McNaught spotted a desktop computer on the living-room floor. The computer wasn't attached to a keyboard or traditional monitor, but it was connected to a flat-screen TV. According to Investigator McNaught, Hamilton described the computer as "kind of a family computer" and said that "[a]nytime she or her kids wanted to use it, they did." She explained that they used the computer to watch movies, play games, check the children's grades, and store work-related documents. However, since the apartment's wireless Internet service had been discontinued about a month earlier, they could only access the Internet when Wright was around to use his cellphone as a wireless hotspot. Hamilton also pointed out her own laptop computer; she told the investigator that with the exception of her personal laptop, Wright owned the rest of the computer equipment in the apartment.

Investigator McNaught then "previewed" the desktop computer's hard drive by connecting it to his own laptop, a standard forensic procedure that allows investigators to view the drive's contents without altering it. This preview revealed images of child pornography, so McNaught asked Hamilton for permission to seize the computer along with the rest of the electronic devices in the apartment for further investigation. She agreed. Off-site forensic analysis of the computer revealed additional pornographic images as well

No. 15-3109                                                        5

as video and still images of Wright engaging in sexually explicit conduct with a minor.

Finally, Investigator McNaught testified about a second interview that he conducted with Hamilton *after* he completed his search of the apartment. During this longer follow-up interview, Hamilton described the living arrangements at the apartment, which was leased in her name. She explained that she and Wright had been in a tumultuous, "on-and-off" relationship for the last two years and had broken up several days earlier. Prior to the breakup, the couple had been living together in the apartment along with their six-month old son, three of Hamilton's children from another relationship, and two of Wright's children from another relationship. Since the breakup Wright and his two daughters were temporarily staying with his mother while Hamilton and her children prepared to move out of the apartment permanently.

Hamilton also talked about the desktop computer during the second interview. She mentioned a long password that her children knew but she did not. She suggested that the password was somehow associated with the computer but was unable to say if it was required to gain access to the computer itself or only to access the Internet via the apartment's wireless connection. Hamilton also reiterated that she and her children regularly used the computer to watch movies, play games, and access the Internet. The forensic analysis of the computer did not reveal any sign of password protection, but it did confirm that Hamilton and her children had used the computer recently: The browser history revealed frequent visits to kid-friendly websites, online videos

6                                                    No. 15-3109

relating to women's and mothers' issues, and the homepage for the children's school.

Based on Investigator McNaught's testimony, the judge concluded that Hamilton exercised common authority over the desktop computer and could give valid consent to the warrantless search. Accordingly, the judge denied Wright's motion to suppress. Wright pleaded guilty to one count of sexual exploitation of a minor and one count of possessing child pornography but reserved his right to appeal the ruling on his suppression motion.

## II. Discussion

Wright challenges the district court's denial of suppression. We review the judge's legal conclusions de novo and factual findings for clear error. *United States v. James*, 571 F.3d 707, 713 (7th Cir. 2009). Wright's challenge is limited to the search of the desktop computer, which was conducted without a warrant but with Hamilton's consent.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. A warrantless search of property is per se unreasonable unless an established exception applies. *United States v. Henderson*, 536 F.3d 776, 779 (7th Cir. 2008) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). Searches conducted with consent are one such exception. *Fernandez v. California*, 134 S. Ct. 1126, 1132 (2014); *see also James*, 571 F.3d at 713 ("Because a person may voluntarily waive his Fourth Amendment rights, no warrant is required where the defendant consents to a search.").

Consent may be obtained either from the defendant or from a third party who exercises common authority over the property to be searched. *United States v. Matlock*, 415 U.S. 164, 170–71 (1974). Common authority does not require the existence of an ownership interest in the property; it "rests rather on mutual use of the property by persons generally having joint access or control for most purposes." *Id.* at 171 n.7. The premise of this rule is that a defendant who permits another person to use his property assumes the risk that that person will allow others to access the property in his absence. *Id.*; *see also United States v. Jackson*, 598 F.3d 340, 347 (7th Cir. 2010). And because "the ultimate touchstone of the Fourth Amendment is reasonableness," *Fernandez*, 134 S. Ct. at 1132 (quotation marks omitted), either actual authority or apparent authority is enough to support third-party consent. *Illinois v. Rodriguez*, 497 U.S. 177, 188–89 (1990); *see also James*, 571 F.3d at 714. The government bears the burden of proving authority to consent, whether actual or apparent, by a preponderance of evidence. *James*, 571 F.3d at 714.

## A. Actual Authority

Wright concedes that Hamilton exercised common authority over the couple's apartment, but it doesn't necessarily follow that her authority extended to the desktop computer found inside. "The key to consent is actual or apparent authority *over the area to be searched*." *United States v. Basinski*, 226 F.3d 829, 834 (7th Cir. 2000) (emphasis added). As several of our sister circuits have observed, in this context computers are akin to closed containers: The information that they "contain" is usually not readily observable without some further investigation. *See United States v. Andrus*, 483 F.3d 711, 718 (10th Cir. 2007); *United States v. Buckner*,

473 F.3d 551, 554 (4th Cir. 2007); *cf. United States v. Rodriguez*, 888 F.2d 519, 523 (7th Cir. 1989) ("Many a closed container is accessible; opening it requires justification … ."). So Hamilton's authority over the computer turns on whether she enjoyed mutual use of, access to, and control over the computer itself.

It's clear that she did. The desktop computer belonged to Wright, not Hamilton, but it functioned as a family computer. According to Hamilton, she and her children freely used it to watch movies, play games, check the children's grades, and store work-related documents. Forensic analysis bolstered this claim: Investigator McNaught testified that he found "a lot of Internet history" showing recently viewed children's movies and games as well as the login page for Urbana Middle School's website. Moreover, Wright left the computer in the apartment when he went to stay with his mother, leaving Hamilton with unrestricted access to and control over it in his absence. These facts easily establish that Hamilton exercised common authority over the computer. *Cf. Frazier v. Cupp*, 394 U.S. 731, 740 (1969) (holding that the defendant's cousin had common authority over a duffel bag that the cousin was allowed to keep at his house and use to store his belongings).[1]

---

[1] Wright notes that the only way to access the Internet from the desktop computer was to use his cellphone as a wireless hotspot. This, he claims, demonstrates that Hamilton's use of the computer was restricted because she could only get online in his presence and with his permission. His claim is only half true. The apartment's wireless Internet service was discontinued about a month before the search because the couple had failed to pay their bill. However, forensic analysis uncovered an Internet history consistent with Hamilton's testimony dating back more than *two months* before the search occurred. So Hamilton had at least one month

No. 15-3109                                                9

Wright's arguments to the contrary are unpersuasive. First, he makes much of the fact that he and Hamilton had ended their relationship shortly before the search occurred. He emphasizes that Hamilton was in the process of moving out of the apartment and that she was not planning to take the desktop computer with her when she left. He argues that any authority over the computer Hamilton once had was revoked when she started packing up her things to move out. But the end of a romantic relationship doesn't automatically mean that common authority over shared property has been revoked. *See United States v. Ryerson*, 545 F.3d 483, 488 (7th Cir. 2008). If the ex-partner "continue[s] to access, use, or control the property," as Hamilton did, she continues to exercise authority regardless of the relationship's status. *Id.*

Second, Wright points out that the desktop computer had a password associated with it—one that Hamilton admitted she didn't know. He argues that this admission necessarily means that Hamilton lacked common authority over the computer. It's true that ignorance of a computer password may demonstrate a lack of authority under some circumstances. Like a lock on a briefcase or storage trunk, password protection on a computer demonstrates the owner's affirmative intent to limit access to its contents. *See, e.g., Andrus*, 483 F.3d at 718; *Buckner*, 473 F.3d at 554; *Trulock v. Freeh*, 275 F.3d 391, 403 (4th Cir. 2001). In other words, a defendant who password-protects his computer does *not* assume the

---

of unlimited Internet access before the search. Moreover, online browsing is just one of several ways in which Hamilton claimed that she used the desktop computer. The other uses that she described—watching downloaded movies and storing work-related documents—only required access to the computer itself, not the Internet.

risk that third parties not privy to the password will permit others to access the computer's contents in his absence. *See Buckner*, 473 F.3d at 554. Accordingly, third parties from whom a password has been withheld lack common authority over a computer.

But Hamilton is not in that situation. As an initial matter, there's some ambiguity about whether the desktop computer was actually password-protected. Hamilton was unable to specify whether the long password she mentioned was required to access the computer itself or simply to connect to the apartment's wireless network. Investigator McNaught, on the other hand, testified unequivocally that forensic analysis of the computer revealed no sign of password protection. Given these facts, we think it unlikely that the computer itself was password-protected.

That said, we agree with the district judge that Hamilton exercised common authority over the computer even assuming it was password-protected. Hamilton didn't know the password but her children did, which strongly suggests that Wright made no attempt to keep it from her. *Cf. United States v. Richards*, 741 F.3d 843, 850 (7th Cir. 2014) ("[The defendant] had an expectation of privacy in the west bedroom because … he *alone* had access to the room if it was locked.") (emphasis added). Indeed, there's no indication that Wright made any effort to prevent Hamilton from using the computer despite knowing that she and her children did so frequently. In contrast Wright *did* take steps to prevent Hamilton from accessing his cellphone: Hamilton told Investigator McNaught that she rarely even got a look at the phone because Wright was constantly changing its passcode. In this context Hamilton's ignorance of whatever password

may have been associated with the desktop computer
doesn't undercut the common authority that she exercised
by virtue of being able to use the computer whenever she
wanted. *See James*, 571 F.3d at 714 (holding that the defend-
ant's mother exercised common authority over a safe left in
her possession absent "evidence that [the defendant] at-
tempted to limit or restrict her control over the safe"). Her
consent to the warrantless search of the computer's hard
drive was therefore valid, and the judge properly denied
Wright's motion to suppress on this basis.

## B.  Apparent Authority

Although the district judge considered only Hamilton's
actual authority over the desktop computer, the record
establishes that Hamilton also exercised apparent authority,
which provides an alternative basis for denying Wright's
suppression motion. *See United States v. Reaves*, 796 F.3d 738,
741–42 (7th Cir. 2015) ("[W]e may affirm the judgment of the
district court on any ground supported in the record.").
Apparent authority exists if "the facts available to an officer
at the time of a search would allow a person of reasonable
caution to believe that the consenting party had authority"
over the property to be searched. *Ryerson*, 545 F.3d at 489
(citing *Rodriguez*, 497 U.S. at 188); *see also United States v.
Groves*, 470 F.3d 311, 319 (7th Cir. 2006) ("Facts that came to
light after the search began cannot reasonably have influ-
enced the officers' beliefs regarding whether [a third party]
possessed apparent authority.").

Of course "mere possession of [a closed] container by a
third party does not necessarily give rise to a reasonable
belief that the third party has authority to consent to a search
of its contents." *Basinski*, 226 F.3d at 834. Rather "one must

look for indicia of actual authority" over the container known to the officer at the time of the search. *United States v. Rosario*, 962 F.2d 733, 737 (7th Cir. 1992) (quotation marks omitted); *see also Basinski*, 226 F.3d at 834 ("[A]pparent authority turns on the government's knowledge of the third party's use of, control over, and access to the container to be searched, because these characteristics are particularly probative of whether the individual has authority over the property."). Typically this analysis entails considering the nature of the container and its outward appearance, including the presence of any sort of locking mechanism. *Basinski*, 226 F.3d at 835. When the container at issue is a computer, a key consideration is "whether law enforcement knows or should reasonably suspect because of surrounding circumstances that the computer is password protected." *Andrus*, 483 F.3d at 719.

The judge found that before Investigator McNaught searched the desktop computer, Hamilton informed him that it was a family computer that she and her children could use any time. What McNaught observed at the apartment was consistent with this claim. The computer was located on the living-room floor, which was scattered with women's clothes and children's toys, and was also apparently where Hamilton and Wright slept. Although the computer had no keyboard attached to it, it was connected to a flat-screen TV, consistent with Hamilton's earlier claim that she and her children used the computer to watch family movies. Moreover, Hamilton made no mention that the computer might be

password-protected until her second interview with Investigator McNaught, which took place *after* the search.[2]

Given this information, it would have been entirely reasonable for Investigator McNaught to conclude that Hamilton exercised common authority over the desktop computer. *See, e.g., Andrus*, 483 F.3d at 719 ("Third party apparent authority to consent to a search has generally been upheld when the computer is located in a common area of the home that is accessible to other family members under circumstances indicating the other family members were not excluded from using the computer."); *cf. Basinski*, 226 F.3d at 835 (holding that the defendant's friend lacked apparent authority over a briefcase because the officers "knew that [the defendant] never gave [his friend] the combination to the lock"). Hamilton's apparent authority provides an additional basis for concluding that her consent was valid and that Wright's suppression motion was properly denied.

AFFIRMED.

---

[2] At oral argument Wright's counsel suggested that Hamilton first told Investigator McNaught about her use of the desktop computer during the second interview, which occurred *after* the search. The judge's factual findings, which he set forth chronologically in the order denying the motion to suppress, are to the contrary. The judge found that Hamilton told McNaught the entire family used the computer to download and watch family movies during the first, pre-search interview. The judge also found that while Investigator McNaught was searching the apartment, Hamilton again indicated that any time she or her children wanted to use the computer, they did. Wright points to nothing in the record that contradicts these findings, and we see no basis to conclude that they are clearly erroneous.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

September 23, 2016

Before:     FRANK H. EASTERBROOK, Circuit Judge
            DIANE S. SYKES, Circuit Judge
            LYNN ADELMAN, District Court Judge*

| | |
|---|---|
| No. 15-3109 | UNITED STATES OF AMERICA,<br>Plaintiff - Appellee<br><br>v.<br><br>TALON G. WRIGHT,<br>Defendant - Appellant |

| **Originating Case Information:** |
|---|
| District Court No: 2:14-cr-20069-CSB-DGB-1<br>Central District of Illinois<br>District Judge Colin S. Bruce |

The judgment of the District Court is **AFFIRMED** in accordance with the decision of this court entered on this date.

*Of the Eastern District of Wisconsin, sitting by designation.

form name: **c7_FinalJudgment**(form ID: **132**)

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit